Paul J. Stark, ISB #5919
IDAHO EDUCATION ASSOCIATION
P.O. Box 2638
620 N. Sixth Street
Boise, Idaho 83701
Telephone: (208) 333-8560
Facsimile: (208) 344-1606

James M. Piotrowski, ISB #5911
Marty Durand, ISB #5111
HERZFELD & PIOTROWSKI, LLP
P.O. Box 2864
824 W. Franklin
Boise, Idaho 83701
Telephone: (208) 331-9200
Facsimile: (208) 331-9201

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELAINE ASMUS,  ) | CASE NO. 4:14-CV-00520 BLW |
| Plaintiff,  ) | BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| v.  ) | |
| SNAKE RIVER SCHOOL DISTRICT NO. 52, BOARD OF TRUSTEES, SNAKE RIVER SCHOOL DISTRICT NO. 52, SUPERINTENDENT MARK GABRYLCZYK, in his official capacity as Superintendent of Snake River School District No. 52,  ) | |
| Defendants.  ) | |

I.      **INTRODUCTION**

Plaintiff Elaine Asmus ("Asmus") was employed as a teacher at Defendant Snake River School District No. 52 ("District").  Defendant Mark Gabrylczyk ("Gabrylczyk") was employed as the Superintendent of the District.  Following an incident involving Gabrylczyk's wife (who was also a teacher at the District), Asmus was targeted for termination of employment and was disciplined in a manner that ultimately led to the termination of her employment.  In the course of imposing discipline the School District relied on unconstitutionally vague laws and policies, created the appearance of impropriety in its own disciplinary process, relied on excessively stale allegations of misconduct, relied on evaluative matters that had not been placed in her contract of employment in violation of state law, and breached Asmus' contract of employment in several respects.  As to the liability aspects of Asmus' claims for violation of her right to due process of law, and as to the liability aspects of some of her claims for breach of contract, Asmus is entitled to judgment as a matter of law.

II.     **THE RELEVANT MATERIAL FACTS ARE UNDISPUTED**

The following facts are not subject to genuine dispute.

1.      Asmus is an approximately 28-year veteran teacher.  At the time of her discharge, she taught science at the Snake River High School.  Asmus Declaration, ¶ 3.  Asmus's job performance during her tenure with the School District was exemplary and she rose to leadership positions within the District. During the 2013-2014 school year, Asmus taught dual high school/college credit classes, was the science department chair, authored the science curriculum, and mentored two new teachers.  Asmus Declaration, ¶ 4.

2.      Asmus has received numerous awards, nominations and recognitions over the course of her career including Teacher of the Year, Outstanding Teacher and Excellence in Teaching.

Asmus was also appointed by the Idaho Board of Education to serve on several taskforces. She was nominated, by her students, to Who's Who Among America's Teachers for fifteen years running, as well as for numerous other honors. Asmus Declaration, Exhibit 1.

3.      On January 15, 2014, Ms. Asmus was involved in an argument with co-worker Laura Gabrylczyk, the wife of Superintendent Mark Gabrylczyk. Shortly after the argument, Ms. Gabrylczyk submitted a complaint to her administrators against Asmus alleging that Asmus had bullied and harassed her. Asmus Delcaration, ¶ 8, Exhibit 3.

4.      The School Board utilized the School Board's own attorney, Mr. Bryce Lloyd ("Lloyd") to step into the shoes of Superintendent Gabrylczyk and investigate the complaint. Asmus Declaration, ¶ 11; Piotrowski Declaration, Exhibit 20, Defendant's Discovery Response to Interrogatory No. 18. Lloyd was counsel to the School Board before the investigation and he continued to be counsel for the School Board after the hearing. Stark Declaration, ¶ 7, 15.

5.      Prior to January of 2014, Asmus was never warned or given any notice that her behavior was a problem or involved bullying, harassment, or intimidation. Asmus Declaration, ¶ 6.

6.      A mediation was scheduled in February, 2014, in an attempt to resolve the issues between Asmus and Ms. Gabrylczyk. The day before the mediation, Ms. Gabrylczyk backed out and refused to attend the mediation. Asmus Declaration, ¶ 9-10; Stark Declaration, Exhibit 15, Hearing Transcript, 70:14-16

7.      At School Board meetings held on both February 18, 2014 and February 28, 2014, the School Board's attorney, Lloyd, was invited to and attended executive session meetings. The investigation was discussed, ex parte, on both occasions. Stark Declaration, Exhibit 15, Hearing Transcript 55:16-18; 56:7-16 Piotrowski Declaration, Exhibit 17, Miller Deposition, 12:4 – 14:24; Piotrowski Declaration, Exhibit 20, Defendant's Response to Interrogatory No. 9.

8.      Sometime in February, 2014, the School Board retained the services of Mr. Scott Marotz ("Marotz") as counsel to Lloyd. At the February 18, 2014 School Board meeting, Marotz accompanied Lloyd into executive session with the School Board where the termination of Asmus was discussed ex parte.  Piotrowski Declaration, Exhibit 20, Defendant's Answer to Interrogatory No. 13.

9.      By letter dated February 27, 2014, Lloyd recommended termination of Asmus based upon allegations of violation of Principle X of the Code of Ethics for Idaho Professional Educators, as well as Board Policies No. 7440, 7480, 7435, and 8735.  Asmus Declaration, ¶ 11, Exhibit 6.  The letter went on to allege years of bad behavior without articulating any specific instance or detail.    The letter accuses Asmus of "bullying" and causing others to "leave the District."  Id.  However, the letter provides no specific incident or example.  It is vague and does not identify the source or the time frame of the allegations.  It provided no information on which Asmus could prepare a defense.

10.     On April 4th and 7th  a hearing was held regarding the termination of Asmus. Testimony was presented by both parties.  Marotz participated at the hearing as counsel for the School District's administration advocating for the termination of Asmus. The School Board's attorney, Lloyd, was present at the hearing acting in the capacity of the Superintendent, also advocating for Asmus's termination. Asmus was represented by attorney Paul J. Stark.  Stark Declaration, Transcript of Hearing, Exhibit 15.

11.     At the hearings it was shown, and not disputed by any witness, that Asmus has had an exemplary career at Snake River. Every single witness that testified at the hearings acknowledged that Asmus was an excellent teacher.  Stark Declaration, ¶ 9; Asmus Declaration, Exhibit 7, Findings and Conclusion, p. 2, ¶ 2.  Marotz presented witnesses at the hearing who

testified to Asmus' conduct over the preceeding several years and included additional allegations of bullying.  Stark Declaration, ¶ 7.  Asmus's evaluations were completely silent regarding any of these allegations and her conduct toward others was never even mentioned in any annual evaluation.  Asmus Declaration, ¶ 6, Exhibit 2.

12.     At the hearing, Lloyd testified that he investigated allegations of alleged harassment that happened years ago:

> Q:    Did you make a determination of how many people were involved or how many incidents or people that Mrs. Asmus was alleged to have harassed?
> A:    I have at least 12 people.
> Q:    Over what period of time?
> A:    It could go back as far as 20 years, but definitely very strong harassment and intimidation and bullying tactics over the past five years.

Stark Declaration, Exhibit 15, Hearing Transcript, 39:20 – 25.

13.     Former colleague James Wilcox testified to an incident involving the loaning of school property that occurred in 2009.  Id., 182:22 – 183:25.

14.     Arynne Hodge testified concerning a conversation in the faculty lounge that occurred "a few years ago."  Id., 334:8-18.

15.     Martoz attended at least one School Board meeting, after the hearing had concluded, and participated in the Board's deliberations and discussions concerning the level of discipline that was appropriate.  Piotrowski Declaration, Exhibit 19, Kunz Deposition, 26:4-6, 28:14-18.

16.     The School Board issued its Findings of Fact and Conclusions of Law and decided to retain Asmus, but put her under a 1-year probationary plan. In its Findings and Conclusions, the Board found that Asmus had violated the Preamble to the Code of Ethics which provides, in relevant part that a professional educator "believes that sound, professional, personal relationships with colleagues, governing boards and community members are built upon

integrity, dignity and mutual respect."   Asmus Declaration, Exhibit 7, Findings and Conclusions, pp. 12-13, ¶ 4-6.

17.     The Board also found that Asmus had violated Principle X of the Code of Ethics, specifically citing those sections of the Principle X which prohibit "committing any act of harassment toward a colleague," and "conduct that is offensive to the ordinary dignity, decency and morality of others." Id.   Further, the Board found that Asmus had violated Board Policy 7480's prohibition on behavior that is "disrespectful, professionally or personally harmful to a teacher, administrator or staff member," as well as Policy 7440's requirement of undefined "professionalism."  Id.

18.     The Board relied on evidence presented of earlier incidents, going back years, in making their decision to discipline Asmus.  Id., p. 5, ¶ 10; Piotrowski Declaration, Exhibit 18, Martin Deposition, 17:3 – 18:23.

19.     The School Board directed in its Findings of Fact and Conclusions of Law that "Prior to consideration of such plan of probation by the Board, Ms. Asmus shall be given written notice of such recommended plan of probation."  Asmus Declaration, Exhibit 7, p. 16, ¶ 2.

20.     Asmus was never given such notice. Id., ¶ 14.  Instead, Jackson presented the plan of probation to the Board of Trustees for adoption before Asmus was given notice.  Piotrowski Declaration, Exhibit 16, Adolphus Deposition, 18:19-20,

21.     The Plan of Probation was written, in part, by Marotz or Lloyd, (Piotrowski Declaration, Exhibit Exhibit 20, Defendant's Discovery Response to Interrogatory No. 26) and was drafted in such a manner that it would be practically impossible for Asmus to successfully complete. Asmus Declaration, ¶ 16-20; Exhibit 8.  Asmus was required to document and report, every week, every positive interaction she had with any and all District personnel. Id., ¶ 7. She was

required to provide evidence of her ongoing compliance with Board policies and the Idaho Code of Ethics.  Id.,  ¶8.  The plan further required Asmus to make available at all times, to any teacher, the supplies she needed to teach her science classes. Id., ¶4.   The plan also required, for no apparent reason, that Asmus move her entire classroom across the hall.  Id., ¶ 9.

22.    When concerns over the terms of the plan of probation, as well its ambiguity and the lack of meaningful opportunity to successfully complete the plan, were brought to the attention of the principal, the principal refused to discuss any concerns, but instead directed Asmus to take her concerns to the School Board.  Asmus Declaration, ¶ 18.

23.    In early June, a letter was written to the School Board asking for an opportunity to address the Board in executive session in order to discuss Asmus's concerns, as well as other issues of impropriety (including intimidating witnesses) that had been revealed since the conclusion of the hearing. Asmus Declaration , Exhibit 9.  The School Board met with Asmus and Stark in late June of 2014.  Asmus Declaration, ¶ 22.

24.    At this meeting the School Board told Asmus to file a grievance if she did not like what was in the probation plan.   The School Board did not address Asmus's concerns about allegations of witness intimidation and perjury by the Superintendent and/or his wife.  Asmus Declaration, ¶ 22, Stark Declaration, ¶ 12.    Rather, she was simply told to grieve the matter. Asmus Declaration, ¶ 22; Stark Declaration, ¶ 12; Piotrowski Declaration, Exhibit 18, Martin Deposition, 12:19-25

25.    On June 25, 2014, Asmus filed two grievances, as the Board of Trustees had invited her to do. The first one involved the terms of the probation plan and the second involved inappropriate behaviors by the School District administration before, during and after the hearing. The first grievance specifically addressed the fairness of the probation plan and the lack

of any meaningful collaboration. Asmus Declaration, Exhibit 11.  The second grievance alleged inappropriate and retaliatory actions taken by Mr. Jackson and Mr. Gabrulczyk, including Mr. Gabrylczyk's involvement in directing the terms of her probation.  Id., Exhibit 12.  The Board specifically directed that the recommended probation plan be made "without the involvement, input or oversight by the Superintendent."  Asmus Declaration, Exhibit 7, p. 16, ¶ 2.

26.     According to the grievance procedure as set out in the Master Contract governing terms and conditions of employment for teachers, the School Board had five (5) days to reply to the grievances. Asmus Declaration, Exhibit 14.  Over three (3) weeks later, on July 17, 2014, Asmus received a written denial of the grievances. Asmus Declaration, ¶ 25, Exhibit13.   Despite not receiving the response until July 17, it was misleadingly dated July 3, 2014.  Id.   In its denial of the grievances, the District did not ever address Asmus's concerns, but denied the grievances on purely procedural grounds, ignoring its own invitation to her to attempt to address the issues via the grievance process. Asmus Declaration, Exhibit 13.   The response was drafted by Mr. Storer (Piotrowski Declaration, Exhibit 16, Aldous Deposition, 24:8-23) and was never discussed by the entire Board (Piotrowski Declaration, Exhibit 19, Kunz Depostion, 56:11-15), but was rather the decision of only Adolpus.

27.     During this period of uncertainty regarding what were to be the terms of Asmus's employment, as contained in the plan of probation, and Ms. Asmus's efforts to get clarification, the School District demanded that Ms. Asmus sign a contract with the School District for the 2014-2015 school year.  Asmus Declaration,  ¶ 20.

28.     Asmus expressed to the School District her desire to continue to work for the School District for the 2014-2015 school year, but wished first to obtain clarification as to the terms and conditions of her employment from the School Board, as communicated via her Principal in the probation plan drafted by the District's attorneys. Asmus Declaration, ¶ 21.

29.     Asmus did everything the School District directed her to do in order to get her concerns addressed. While her attempts to get clarification were pending before the School Board, however, the School District withdrew its offer of employment on June 30, 2014 and posted Asmus's position on July 1, 2014.  Asmus Declaration, ¶ 24.

30.     Asmus was hired by the Bonneville School District to teach science for the 2014-2015 school year.  Asmus was unable to teach dual credit courses at Bonneville, and she suffered a loss of earnings.  Asmus Declaration, ¶ 28.

31.     The actions of the School District caused Asmus a great deal of stress, which impacted her physical well being.  She suffered a variety of stress related conditions, for which she sought treatment to alleviate her pain and suffering.  Asmus Declaration, ¶ 29.

## III.     UNDER THE RELEVANT STANDARD OF REVIEW, PLAINTIFF ASMUS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

The summary judgment standard is well-familiar to this Court: where a party moves for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  F.R.C.P. 56(c).  Where, as here, the party moving for summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992), citing *International Short Stop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991); *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J. dissenting).  Once the moving party meets its burden, the non-moving party must come forward with evidence refuting the moving party's case, i.e., submit evidence sufficient to create a genuine issue of material fact such that a reasonable trier of fact could find in the non-

moving party's favor. *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1409 (9th Cir. 1995); *California Architectural Building Products v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir. 1987), citing *Celotex*, 477 U.S. at 323 and *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-252 (1986). Applying these standards, the Ninth Circuit has had little difficulty granting summary judgment in favor of moving party plaintiffs or defendants who bore the burden of proof on issues and claims at trial. *United States v. Carter*, 906 F.2d 1375 (9th Cir. 1990); *Watts v. United States*, 703 F.2d 346 (9th Cir. 1983); *Bank Melli Iran*, 58 F.3d at 1413.

Also, where no genuine issue of material fact exist on the issue of liability, "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." F.R.C.P. 56(c). Applying this provision, the Ninth Circuit has affirmed orders for partial summary judgment on liability issues, leaving damages issues for trial. *Pacific Fruit Express Co. v. Akron, C. & Y.R. Co.*, 524 F.2d 1025, 1029-1030 (9th Cir. 1975)

## IV.   ARGUMENT

### A.   There is No Genuine Dispute that the School District Violated Plaintiff Asmus's Right to Due Process of Law, as Set Forth in her First Claim for Relief.

#### 1.   Section 1983 Provides Relief for Taking of a Property Interest Without Due Process of Law

As a continuing contract teacher who had been employed by the District for decades, Asmus had an expectation of continued employment. I.C. §33-513; *Miller v. Ririe Joint School District,* 132 Idaho 385, 973 P.2d 156 (1999). Because of this lawful and reasonable expectation of continued employment, Asmus possessed a property interest within the meaning of the Fourteenth Amendment to the United States Constitution. *Cleveland v. Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-539 (1985); *Board of Regents v. Roth*, 408 U.S.564, 576-578

(1972); *Johnson v. Bonner County School District No. 82*, 126 Idaho 490, 493, 887 P.2d 35, 38 (1996); *Farner v. Idaho Falls School District No. 91*, 135 Idaho 337, 341, 17 P.3d 281, 285 (2000); *Lowder v. Minidoka County Joint Sch. Dist. No. 331*, 132 Idaho 834, 839, 979 P.2d 1192, 1197 (1999);  *Miller,* 973 P.2d at 158.  Because her interest in continued employment rose to the level of a property interest, the School District could only take that interest from her if it fully complied with the requirements of due process.  *Id.*

Both the United States and Idaho Supreme Courts have held that 42 U.S.C. § 1983 is the appropriate statutory vehicle for remedying violations of federal constitutional provisions, including the due process clause of the Fourteenth Amendment.  *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 199-200 (1992); *Miller v. Ririe Joint School District No. 252*, 132 Idaho 385, 387, 973 P.2d 156, 158 (1999).  Thus, Plaintiff Asmus' claim is properly brought under §1983.

      2.     <u>The District Violated Due Process by Relying on Standards of Conduct that were too Vague and Indefinite to Provide Adequate Notice of what Conduct was Prohibited.</u>

A statute or regulation is void for vagueness when it does not sufficiently identify the conduct that is prohibited. The due process clause requires a rule of law to be sufficiently clear so as not to cause persons "of common intelligence . . . necessarily [to] guess at its meaning and [to] differ as to its application[.]" *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 70 L. Ed. 322, 46 S. Ct. 126 (1926).  Laws that are insufficiently clear are void for three reasons: (1) To avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on arbitrary or discriminatory interpretations by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms. *United States v. Wunsch,* 84 F.3d 1110 (9th Cir. Cal. 1996) citing *Grayned v. City of*

*Rockford,* 408 U.S. 104, 108-109, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972).  In depriving Asmus of her property interest in continued employment, the School District relied almost exclusively on standards of behavior that were impermissibly vague in violation of the right to due process of law.

The void-for-vagueness doctrine requires "reasonably clear guidelines to prevent 'arbitrary and discriminating enforcement' and to prescribe a precise standard for the adjudication of guilt." *Smith v. Goguen*, 415 U.S. 566, 572-3 (1974).  Due process requires that all "be informed as to what the State commands or forbids," *Lanzetta* v. *New Jersey*, 306 U.S. 451, 453 (1939), and that "men of common intelligence" not be forced to guess at the meaning of the law.  *Connally* v. *General Construction Co*., 269 U.S. 385, 391 (1926).

The Ninth Circuit has specifically noted the difficulty with ambiguous prohibitions on "offensive" conduct. *United States v. Wunsch*, 84 F.3d 1110 (9th Cir. 1996).  In that case the Court addressed a California statute which required licensed attorneys to refrain from "offensive personality" in their professional dealings.   The Court found the term "clearly . . . unconstitutionally vague," citing *Cohen v. California,* 403 U.S. 15, 25, 29 L. Ed. 2d 284, 91 S. Ct. 1780 (1971) ("disturbing the peace . . . by . . . offensive conduct" fails to give sufficient notice of what was prohibited). The Court further noted that as "offensive" could refer to any number of behaviors that many attorneys regularly engage in during the course of their zealous representation of their clients' interests, it would be impossible to know when such behavior would be offensive enough to invoke the statute. For the same reason, the statute was found "so imprecise that discriminatory enforcement is a real possibility." 84 F.3d 1110, 1118.

Statutory phrases such as "offensive personality," *Id.*, "conduct . . . annoying to persons passing by," *Coates v. City of Cincinnati*, 402 U.S. 611, 612-14 (1971), and "of such character as

to be prejudicial to the best interests of the people," *Gelling v. Texas*, 343 U.S. 960 (1952)(per curiam) (Frankfurter, J., concurring), have all been held unconstitutionally vague.  Likewise, regulatory standards that turn on determinations of "decency" or "respect" have been found to provide "no standard of conduct . . . at all," and thus are void for vagueness.  *Finley v. Natl'l. Endowment for the Arts,* 100 F.3d 671, 680 (9th Cir. 1996).  Statutes, ordinances or regulations that broadly prohibit "harassment," but without providing express definition of the term (and without including requirements for scienter and substantial harm to others) have also been routinely found void for vagueness.  *Longmont v. Gomez,* 843 P.2d 1321 (Colo. 1993); *People v. Norman,* 703 P.2d 1261 (Colo. 1985); *Kramer v. Price,* 712 F.2d 174 (5th Cir. 1983).  For similar reasons, the Idaho Supreme Court has quoted with approval a case in which the California Supreme Court considered that state's regulations allowing discipline of a certified teacher for "unprofessional conduct:"

> Civil as well as criminal statutes must be sufficiently clear as to give a fair warning of the conduct prohibited, and they must provide a standard or guide against which conduct can be uniformly judged by courts and administrative agencies.  The knowledge that he has erred is of little value to the teacher when gained only upon the imposition of a disciplinary penalty that jeopardizes or eliminates his livelihood.

*Tuma v. Board of Nursing,* 100 Idaho 74, 80, 593 P.2d 711 (1979) quoting *Morrison v. State Board of Education*, 1 Cal.3d 214, 461 P.2d 375 at 389 (1969).  In *Morrison,* the California Court ultimately held the statute was saved by a narrowing construction applied by the Courts of California.  But the regulations and laws of Idaho and the Snake River School District which were used to support the discipline of Elaine Asmus have not been subjected to any such narrowing construction which would save them from being void for vagueness.

Asmus was alleged to have violated the Preamble and Principle X of the Code of Ethics for Professional Educators, as well as two District Policies.   The particular provisions of the

Code of Ethics on which the District relied are impermissibly vague, as are the District Policies cited.

The Findings of Fact and Conclusions of law state that Asmus' conduct was "directly contrary to the spirit of the Code of Ethics as set forth in the Preamble."  Asmus Declaration, Exhibit 7, p. 12, ¶ 4.  The relevant portion of the Preamble is cited on page 11 of the Findings and Conclusions:

> The Preamble to the Code of Ethics for Idaho Professional Educators, under the heading "Aspirations and Commitments" provides as follows:
>
>> The professional educator believes the quality of services rendered by the educational profession directly influences the nation and its citizens. He strives therefore, to establish and maintain the highest set of professional principles of behavior, to improve educational practice, and to achieve conditions that attract highly qualified persons to the profession.
>>
>> The professional educator regards the employment agreement as a pledge to be executed in a manner consistent with the highest ideals of professional service. *He believes that sound, professional, personal relationships with colleagues, governing boards, and community members are built upon integrity, dignity, and mutual respect* . . . . (emphasis added [by Board of Trustees])

To the extent the Preamble even creates any standards, it speaks to "professional principles of behavior,"  "professional personal relationships," "dignity, and mutual respect."  All of these are types of ambiguous, nearly standardless language that have been found unconstitutionally vague. Furthermore, the District found Asmus had violated "the spirit" of the Preamble, adding yet another level of ambiguity to what it is she is supposed to have understood about the conduct expected of her.

That portion of Principle X of the Code of Ethics that the Board of Trustees found was violated was likewise quoted in the Findings and Conclusions:

A Professional educator ensures just and equitable treatment for all members of the profession in the exercise of academic freedom, professional rights and responsibilities while following generally recognized professional principles. Unethical conduct includes but is not limited to:

a)   any conduct that seriously impairs the certificate holder's ability to teach or perform his or her professional duties;

b)   committing any act of harassment toward a colleague;

c)   conduct that is offensive to the ordinary dignity, decency, and morality of others.

Principle X fails to adequately define unethical conduct in a manner that would satisfy due process. It relies on notions "offensive" conduct, which the Courts have routinely found insufficiently precise to satisfy due process. The term "harassment" is not defined in the Code of Ethics, nor does it refer or even imply any particular definition. As defined in other sections of Idaho Code[1], the conduct alleged does not constitute "harassment." The terms "dignity," "decency" and "morality" are not defined anywhere in the Code of Ethics, or in Idaho Code. Furthermore, subparagraph (c) prohibits conduct offensive to "others," not just teachers,

---

[1] 18-7902. MALICIOUS HARASSMENT DEFINED -- PROHIBITED. It shall be unlawful for any person, maliciously and with the specific intent to intimidate or harass another person because of that person's race, color, religion, ancestry, or national origin, to:

(a)   Cause physical injury to another person; or

(b)   Damage, destroy, or deface any real or personal property of another person; or

(c)   Threaten, by word or act, to do the acts prohibited if there is reasonable cause to believe that any of the acts described in subsections (a) and (b) of this section will occur.

For purposes of this section, "deface" shall include, but not be limited to, cross-burnings or the placing of any word or symbol commonly associated with racial, religious or ethnic terrorism on the property of another person without his or her permission.

18-7905(d)(1) STALKING - (1) "Harasses" means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys or harasses the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress.

18-917A(2) – STUDENT HARASSMENT  As used in this section, "harassment, intimidation or bullying" means any intentional gesture, or any intentional written, verbal or physical act or threat by a student that:

(a)   A reasonable person under the circumstances should know will have the effect of:

(i)   Harming a student; or

(ii)   Damaging a student's property; or

(iii)   Placing a student in reasonable fear of harm to his or her person; or

(iv)   Placing a student in reasonable fear of damage to his or her property; or

(b)    Is sufficiently severe, persistent or pervasive that it creates an intimidating, threatening or abusive educational environment for a student.

colleagues or those associated with the teaching profession.   As the Ninth Circuit has explained, defining prohibited conduct merely by calling it "offensive," "could refer to any number of behaviors that many [teachers] engage in. . . [and] it would be impossible to know when such behavior would be offensive enough to invoke the statute."  *Wunsch,* 84 F.3d 1110, 1119.

The School Board found that Asmus violated District Policy 7480 which states, in relevant part:

> The Board advocates principled and respectful treatment of the District's staff by students, parents and patrons. Any action taken by an individual that is determined to be disrespectful, professionally or personally harmful to a teacher, administrator, or staff member may result in disciplinary action or referral to proper legal authority.

This Policy does not define what conduct is disrespectful or harmful. This section is impermissibly vague as it not only does not define the prohibited conduct, but it also applies only to actions that are "determined" to be bad, by someone, but offers no guidance as to what actions could be included.   Nor does it offer any guidance as to the determination process.   It is impossible to know what actions are prohibited, as what is "determined" offensive today, could be "determined" inoffensive tomorrow.   This Policy allows subjective enforcement based on arbitrary or discriminatory interpretations by whoever may be on the School Board at the time.

The Board also found Asmus had violated District Policy 7440 which states:

> As a valuable and integral member of the Snake River School District, employees are expected to comply and conform to the laws of Idaho and the Code of Ethics of the Idaho Teaching Profession, to adhere to district policies and procedures, to maintain high standards of honesty, integrity and impartiality in the conduct of District business and the use of its resources, and to accept and carry out their responsibilities and assignments with professionalism.

The Board concluded that Asmus did not act with professionalism.  However, the term "professionalism" is not defined and is subject to a variety of interpretations.  If there is particular conduct which the Snake River School District wanted its teachers to avoid, it was

obligated to define that conduct in terms which would make it known, rather than to rely on such terms as "professionalism" which practically invite "the impermissible risk of discriminatory enforcement" that the vagueness doctrine and due process are meant to prevent. *Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1051 (1991).

In this case, all of the bases on which the School Board relied to find that it had grounds to discipline Elaine Asmus (and ultimately to condition her exercise of property interests) were impermissibly vague in violation of her rights to due process of law

3.   <u>The Allegations Against Asmus were so Stale as to Violate Due Process.</u>

At the hearing, witnesses testified as to their feelings about Asmus from months, and indeed even years or decades, prior. Yet, there was nothing in any of her annual evaluations to suggest that there was any difficulty with her colleagues. In fact, the evaluations paint an entirely different picture.

It is fundamentally unfair to discipline Asmus based on allegations for which she was never notified and never given the opportunity to improve. Prohibitions in the law against stale claims "promote[s] justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Bluitt v. Houston Indep. Sch.Dist. & Steven Amstutz*, 236 F. Supp. 2d 703, 716 (S.D. Tex. 2002) citing *Burnett v. New York Cent. R.R. Co*., 380 U.S. 424, 428 (1965). It is a "fundamental requirement of due process" that the "opportunity to be heard" "be granted at a meaningful time." *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965) citing *Grannis v. Ordean,* 234 U.S. 385, 394 (1914).

In the more specific context of tenured teachers, "at some point a delay" in the provision of the opportunity to be heard about an allegatoin, "become[s] a constitutional violation." *Cleveland Bd. Of Education v. Loudermill,* 470 U.S. 532,547 (1985).  In this case, although it is true that Ms. Asmus was provided a hearing prior to discipline being imposed, that hearing occurred many years after the alleged misconduct.  In cases involving government takings of property interests, delays in providing due process are weighed in relation to four factors: the "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *U.S. v. Eight Thousand Eight Hundred and Fifty Dollars,* 461 U.S. 555, 564 (1983).  In this case, the delay was one of many years.  The allegations relied on to justify disciplining Asmus were literally years, and even decades old.  The District has offered no justification whatsoever for the delay.  The School District through its agents was aware of the alleged misconduct by Asmus occurring years prior, yet chose to do nothing about it, until 2014, when Asmus happened to incur the ire of a new superintendent.

Asmus, by contrast, has always exercised her rights.  She obtained an annual evaluation of her job performance, which should have informed her of any deficiencies.  On the rare occasions that she was informed of deficiencies she improved on them, so as to maintain what even the District's witnesses agreed was an exemplary record of high quality instruction leading the District to assign her leadership duties among her peers.  When the stale allegations were finally aired in a due process hearing, Asmus was unable to counter them because other witnesses who might have seen the events were impossible to identify, or were not present, or their memories had faded, all of which worked to her prejudice.

These stale allegations were relied upon despite the fact that the School District had a legal duty to (1) maintain records of these allegations in Asmus' personnel file and (2) provide

her a timely opportunity to rebut them.  I.C. §33-518.[2]   Instead of complying with its legal duties under either state statute or the federal constitution, the District dragged out ancient allegations of misconduct that could not be defended against, in order to justify taking Asmus' interest in continued employment.

4.      The School District Allowed an Appearance of Impropriety so Severe it Violated Asmus' Right to an Impartial Decision Maker.

The School District created, at the very least, the appearance of impropriety in its processes when (1) the School Board's attorney, Bryce Lloyd, stepped into the role of an administrator in this matter, and thereafter issued a recommendation for termination to his own clients;  (2) the same attorney testified as/for the administration in the hearings that were held on April 4 and 7, 2014; and (3) the District's attorneys participated in the deliberations following the hearing.  Lloyd attended executive session with the School Board on both February 18th and February 28th.   Further, the administration's (Lloyd's) attorney (Marotz) also attended the executive session of the School Board on February 18th.  These facts demonstrate that Asmus's Due Process rights were violated.

In *Miller v. Board of Trustees, Ririe Joint School District No. 252*, 132 Idaho 385 (1998) the Ririe School District attempted to discharge an elementary school principal on the grounds that she had acted improperly in administering a standardized test.  The attorney for Ms. Miller filed a request for injunctive relief.  Ultimately, there were two separate Idaho Supreme Court cases dealing with the facts in the case.[3]   Pertinent to this matter, is the latter case where the Idaho Supreme Court dealt with the fact that the attorney for the School administration, much

---

[2] Asmus is also alleging a breach of contract based on violation of I.C. §33-518, discussed below.  The statute is mentioned here only to point out the legal duty on the School District that, if followed, would have obviated the due process violation which ultimately occurred.
[3] *Miller v. Board of Trustees, Ririe Joint School District No. 252*, 132 Idaho 385, 973 P.2d 156 (1999) and *Miller v. Board of Trustees, Ririe Joint School District No. 252*, 132 Idaho 244, 970 P.2d 512 (1998).

like in this case, also attended an executive session of the School Board.  In *Miller*, the Court found:

> At both the October 14, 1996, and November 27, 1996, Board meetings, one of the School District Attorneys, Scott Marotz (Marotz), the Superintendent, and the individual Board members met in executive session regarding the adverse employment action contemplated against Miller.  Marotz advised the Superintendent, the Board and the individual Board members concerning the discharge proceedings contemplated and eventually initiated against Miller.

*Id*. at 386, 973 P.2d at 157[4].

The Idaho Supreme Court went on and favorably quoted the District Court in *Miller* when the District Court held, "there 'exists in the present case the appearance of impropriety and the possibility of conscious, or even unconscious, bias on the part of the board in favor of the attorneys who represented them in a prior proceeding.'"  *Id*. at 389, 973 P.2d 160.  The Idaho Supreme Court ultimately held:

> The School District Attorneys were clearly adversaries who were advocating a position against Miller. It was the possibility that the Board members might be biased in favor of the attorneys who had represented them recently in a proceeding by Miller challenging their fairness that created concerns which the district court addressed by issuing an injunction.

*Id*.

Here, the attendance of both Marotz and Lloyd at executive sessions of the School Board created the appearance of impropriety and bias against Asmus.  The *Miller* Court went on to discuss the standard that would justify a conclusion that due process was violated:

> In *Gibson v. Berryhill*, 411 U.S. 564, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973), optometrists who worked for professional corporations sought to prevent an allegedly biased state licensing board from revoking their licenses. The board, composed by law exclusively of private optometrists, had previously brought a lawsuit against those whose licenses they proposed to revoke on virtually

---

[4] To answer the anticipated question, it appears that this is in fact the same Scott Marotz who participated in this case, and who chose to attend executive session meetings of the Board of Trustees before and after the *Lowdermill* hearing in this case.

identical charges to those that were the basis for the proposed revocation. In addition, there was a serious question of the board's personal financial stake in the matter in controversy. The Supreme Court affirmed the three-judge district court's authority to issue an injunction against the state administrative proceeding where the optometrists whose licenses were at issue had a property interest in their right to practice their profession. In doing so, the Court said:

> For the District Court, the inquiry was not whether the Board members were "actually biased but whether, in the natural course of events, there is an indication of a possible temptation to an average [person] sitting as a judge to try the case with bias for or against any issue presented to [the person]."

*Miller v. Ririe Joint Sch. Dist. No. 252,* 132 Idaho 385, 388 (1999) citing *Johnson v. Bonner County School District No. 82*, 126 Idaho 490, 887 P.2d 35 (1994) and *Gibson v. Berryhill,* 411 U.S. 564, 36 L. Ed. 2d 488, 93 S. Ct. 1689 (1973).

The *Miller* Court recognized the risk that ex parte contact might cause a decision maker in a due process hearing to decide unfairly the issues presented in the hearing and creates "the appearance of impropriety and the possibility of conscious, or even unconscious, bias on the part of the board in favor of the attorneys who represented them in a prior proceeding." Id. at 388-389. Proof of actual bias is not required, as due process requires avoidance of even the appearance of impartiality.

Finally, this Court has found the appearance of bias in a similar situation. In *Ackley v. Bruneau Grand-View School District*, Case No. CV-06-10-S-BLW, United States District Court for the District of Idaho, the Court stated:

> When an attorney representing the Board meets with, and gives counsel to, Board members in executive sessions concerning the discharge of a teacher, and then presents the District's case against that same teacher to the Board, a reasonable juror could conclude that the Board may be consciously, or unconsciously, biased in favor of their attorney.

Memorandum Decision, p. 14, Dkt, 35, April 23, 2007.

In this case, Plaintiff Asmus could not seek an injunction against the harm, as was entered in *Johnson* and *Gibson,* since she learned of the impropriety only during the course of the *Lowdermill* hearing, after it had already begun and was well under way.  Instead, she is left solely to retrospective remedies that this Court has power to grant under §1983.  The undisputed facts show an appearance of impropriety in the process sufficient to render it violative of Asmus's right to due process of law.

**B.    There is no Genuine Dispute that the School District Breached Asmus's Contract**

       1.    <u>Violations of Asmus' Rights Under Existing Law also Constitute Breaches of Contract.</u>

Under well established law in Idaho, teachers are employed pursuant to individual contracts of employment which must follow the language of form contracts prepared by the Idaho Department of Education.  I.C. §33-513(1).  Those contracts incorporate, both expressly and as a matter of law, all relevant laws.  *Robinson v. Joint School District No. 150,* 100 Idaho 263, 265 (1979); *Brown v. Caldwell School District NO. 132,* 127 Idaho 112, 118, 898 P.2d 43,49 (1995).  Thus, violation of Asmus's legal rights, under the constitution, or as established by state law, thus constitute breaches of contract.

As set out above, the School District violated Asmus's right to due process of law.  As a result, her contract was breached to the same extent.  As set out below, the District also violated statutory standards which were incorporated, likewise in breach of contract.

       2.    <u>The School District Violated Idaho's Personnel File Statute.</u>

Idaho Code § 33-518 regulates an Idaho School District's establishment and maintenance of employee personnel files, providing in pertinent part as follows:

> The board of trustees of each school district, including any specially chartered district, shall provide for the establishment and maintenance of a personnel file for each employee

of the school district.  Each personnel file shall contain any and all material relevant to the evaluation of the employee.  The employee shall be provided timely notice of all materials placed in the personnel file and shall be afforded the opportunity to attach a rebuttal to any such materials. . .

The Idaho Supreme Court has made clear that, in order to give voice to legislative intent, courts should enforce the express language of an Idaho statute.  *Peasley Transfer & Storage Co. v. Smith,* 132 Idaho 732, 979 P.2d 605 (1999).  Thus, when a statute is clear, there is no need for interpretation; rather, the statute should be applied as written.  *State v. Hagerman Water Rights Owners, Inc.,* 130 Idaho at 732, 947 P.2d at 405.  Specifically, the Idaho Supreme Court has held that the term "shall" as used in Title 33 is imperative and mandatory.  *Rife v. Long,* 127 Idaho 841, 848, 908 P.2d 143, 150 (1995).  The Court has further held that remedial legislation, i.e., legislation designed to provide a remedy or redress injury, must be liberally construed in favor of those whom the legislation was designed to benefit.  *St. Alphonsus Regional Medical Center v. State of Washington,* 123 Idaho 7349, 743, 852 P.2d 491, 495 (1993); *Doggett v. Elecgtronics Corp. of America,* 93 Idaho 26, 30, 454 P.2d 63, 67 (1969).

Asmus was evaluated annually and no material regarding alleged bullying or harassing was ever placed in her file.  She was never notified of the inclusion of any such material in her file.  In the absence of notice, Asmus was never provided an opportunity to timely rebut any accusations of bullying or other improper behavior.  Thus, the undisputed facts show that by an act of commission, Asmus' rights to be evaluated solely on material in her personnel file was violated, and/or that by an act of omission, the District failed to place relevant materials in her file.  Either way, her statutory rights were violated in breach of her contract.

        3.    <u>The District Breached Asmus' Contract by Rendering Its Performance Impossible.</u>

As a matter of Idaho law, the duty of good faith and fair dealing is incorporated into every contract.  A party breaches that duty and the underlying contract if, by its conduct, it renders the other party's performance impossible. *W.O. Kepler v. WHW Management,* 121 Idaho 466, 825 P.2d 1122 (1992); *Hawkins v. Smith,* 35 Idaho 349, 205 P. 188 (1922); *Church v. Dunham,* 14 Idaho 776, 96 P. 203 (1908).  Stated slightly differently, a contract is breached by a party whose own conduct prevents the other party from performing. *Sullivan v. Bullock,* 124 Idaho 738, 864 P.2d 184(Ct.App. 1993) citing  11 Williston, CONTRACTS, §1316, (3rd Ed. 1968, 17A AM.JUR.2d Contracts §380 (1991), *McComber v. Nuckols,* 82 Idaho 280, 353 P.2d 398 (1960), *Molyneux v. Twin Falls Canal Co.,* 54 Idaho 619, 35 P.2d 651 (1934).

In the present case, the terms of probation imposed by the School District were impossible to comply with.  In order to satisfy those terms, Asmus would have had to maintain a daily log of literally every "positive interaction" she had each day.  A teacher in Ms. Asmus' position at the time, a respected member of faculty to whom other teachers went for advice and assistance would be incapable of documenting each and every interaction throughout the course of a day.  Likewise, Asmus was required by the terms of probation to "provide evidence" that she was complying with all District policies.  Given the scope and extent of district policies, this would be the equivalent of proving a negative, a task that is deemed literally impossible by centuries of logic and rhetoric studies. Asmus was required to open her classroom supplies to any and all takers.  This would have made it extremely difficult for her to prepare and teach laboratory classes that required supplies, without know what was available to her that day. Finally, Asmus was required to move her classroom across the hall for no apparent reason.  This was particularly vindictive as Asmus had an emotional attachment to that classroom, that was known to the district.  Asmus Declaration, ¶ 34.

The undisputed facts show that the District imposed terms of probation that were impossible to meet, thus preventing Asmus from performing the requirements of her contract of employment.

## CONCLUSION

Asmus seeks summary judgment on liability for her due process and breach of contract claims.   The undisputed facts show that she was disciplined on the basis of unconstitutionally vague standards of conduct, for conduct that was old as to deny her a meaningful chance to respond, and before a panel that was tainted by the appearance of impropriety.   These matters not only violated her rights under the constitution, but constituted breaches of contract, as did the failure to comply Idaho's personnel file statute for teachers, and the imposition of a plan of probation that actually prevented Asmus from performing her contract.   For all these reasons, partial summary judgment on issues of liability should be entered in Asmus' favor.

HERZFELD & PIOTROWSKI, LLC


___/s/_____
James M. Piotrowski
Marty Durand
Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 11th day of December, 2015, I caused a true and correct copy of the foregoing document to be served on the following via electronic filing through the Court's CM/ECF system:

Jim Reid
jreid@krlawboise.com

Jennifer Reid Mahoney
jmahoney@krlawboise.com

   /s/ James M. Piotrowski     
James M. Piotrowski