UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELAINE ASMUS<br><br>              Plaintiff,<br><br>vs.<br><br>SNAKE RIVER SCHOOL DISTRICT NO. 52; BOARD OF TRUSTEES SNAKE RIVER SCHOOL DISTRICT NO. 52; SUPERINTENDENT MARK GABRYLCZYK in his official capacity of Superintendent of Snake River School District No. 52;<br><br>              Defendants. | Case No. 4:14-CV-00520-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff Elaine Asmus brought this suit alleging violations of her due process rights and breach of contract following disciplinary hearings in April of 2014 and the non-renewal of her contract for the 2014-2015 school year. Both parties then moved for summary judgment as to four of the issues involved. The Court held oral argument on February 17, 2016. For the reasons explained below, Plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted as to the biased tribunal claim, improper notice claim, void for vagueness claim, and the

unconstitutionality of an Idaho statue claim. Plaintiff's state law breach of contract claim is dismissed without prejudice.

## FACTUAL BACKGROUND

Plaintiff Elaine Asmus was a teacher in the Snake River School District for approximately 28 years, until the summer of 2014 when her contract for the 2014-2015 school year was not renewed. On January 15, 2014, Ms. Asmus was involved in an argument with Laura Gabrylczyk, a fellow teacher and the wife of the Snake River School District Superintendent, Mark Gabrylczyk. Each party gives conflicting accounts of the incident, but shortly after the altercation, Ms. Gabrylczyk filed a complaint with school administrators alleging that Ms. Asmus had bullied and harassed her. *Pl. Brief* (Dkt. 17-1) at p. 3 ¶ 3.

At a Board of Trustees meeting on February 18, 2014, the Board went into an executive session, where Bryce Lloyd, the School District's attorney,[1] informed the Board that a complaint had been filed and would need to be investigated. *Def. Brief* (Dkt. 16-1) at p. 2. Mr. Lloyd proposed that because of a conflict, he would act as Superintendent during the investigation and that Scott Marotz would act as the School District's attorney. *Id.* Defendants contend (and support with various affidavits) that Mr. Lloyd did not mention any names or any details at this meeting. *Id.*

On February 27, Mr. Lloyd composed a letter to the Board recommending Ms. Asmus's termination. *Id.* at p. 3. This letter was presented to the Board in an executive

---

[1] Ms. Asmus characterizes Mr. Lloyd as both the School District and the Board's attorney at various points in her brief. Defendants contend that Mr. Lloyd was the School District's attorney.

session of a Board meeting the next day, February 28. *Id.* Mr. Lloyd did not answer the Board's questions about the subsequent proceedings, since those were to be discussed in open session. *Id.* Mr. Martoz did not attend this meeting. *Id.* Ms. Asmus was subsequently provided with Mr. Lloyd's letter recommending termination, and a disciplinary hearing was set for March. While this hearing was ultimately delayed until April, Ms. Asmus received a list of expected witnesses and testimony sometime before March 4. *Exhibit B* (Dkt. 20-2).

The hearing was held over two days, on April 4 and 7, 2014. *Pl. Brief* (17-1) at p. 4. Ms. Asmus was represented by counsel, who had the opportunity to cross-examine and call witnesses on Ms. Asmus's behalf. *Id.* Mr. Lloyd attended the hearings in his capacity as acting Superintendent, and the School District was represented at the hearings by Mr. Marotz, who was advocating for Ms. Asmus's termination. *Id.* All witnesses at the hearing testified that Ms. Asmus was an excellent teacher. *Id.* She has received many awards over her career, and during the 2013-2014 school year she taught dual high school/college credit classes, was the science department chair, and authored the science curriculum. *Id.* at 2. Despite these accolades, the School District presented many witnesses that testified to Ms. Asmus's troublesome conduct over at least several years. *Id.* at p. 4-5.

After the hearing, the Board issued its Findings of Facts and Conclusions of Law. *Id*. at 5. The Board declined to follow the District's recommendation to fire Ms. Asmus; instead, the Board determined that "the teaching contract of [Ms. Asmus] should be renewed." *Def. Brief* (Dkt. 16-1) at p. 3. Specifically, however, the Board found that Ms.

Asmus had violated the Preamble[2] and Principle X[3] of the Code of Ethics of Professional Educators and District Policies 7440[4] and 7480[5] and thus recommended Ms. Asmus's continued employment pursuant to a one-year probationary plan. *Id.* The Board drafted a probation plan, but Ms. Asmus felt that the terms were ambiguous and unreasonable. *Pl. Brief* (Dkt. 17-1) at p. 7.

Ms. Asmus tried, unsuccessfully, to work with the District and the Board to resolve these issues with her probation plan. *Id.* at 7–9. The District offered to renew her employment contract during this period of uncertainty, but Ms. Asmus decline to sign the contract. *Id.* at 8. The District eventually withdrew its offer of employment, and Ms. Asmus instead signed a contract with the Bonneville School District for the 2014-2015 school year. Ms. Asmus subsequently filed this action, alleging violation of her federal

---

[2] "The professional educator regards the employment agreement as a pledge to be executed in a manner consistent with the highest ideals of professional service. He believes that sound, professional, personal relationships with colleagues, governing boards, and community members are built upon integrity, dignity, and mutual respect . . . ." *Pl. Brief* at p. 14 (Dkt. 17-1).

[3] "A Professional educator ensures just and equitable treatment for all members of the profession in the exercise of academic freedom, professional rights and responsibilities while following generally recognized professional principles. Unethical conduct includes but is not limited to:
    a) any conduct that seriously impairs the certificate holder's ability to teach or perform his or her professional duties;
    b) committing any act of harassment toward a colleague;
    c) conduct that is offensive to the ordinary dignity, decency, and morality of others." *Id.* at 15.

[4] "The Board advocates principled and respectful treatment of the District's staff by students, parents and patrons. Any action taken by an individual that is determined to be disrespectful, professionally or personally harmful to a teacher, administrator, or staff member may result in disciplinary action or referral to proper legal authority." *Id.* at 16.

[5] "As a valuable and integral member of the Snake River School District, employees are expected to comply and conform to the laws of Idaho and the Code of Ethics of the Idaho Teaching Profession, to adhere to district policies and procedures, to maintain high standards of honesty, integrity and impartiality in the conduct of District business and the use of its resources, and to accept and carry out their responsibilities and assignments with professionalism." *Id.*

due process rights and breach of contract under state law. Defendants move for summary judgment on all due process claims and argue that this Court should not retain jurisdiction over the supplemental state law claim. Ms. Asmus cross-moves for summary judgment on all claims.

## STANDARD OF LAW FOR SUMMARY JUDGMENT

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The requirement is that there be no genuine dispute as to any material fact. "Material facts are those that may affect the outcome of the case." *Id.* at 248. The moving party is entitled to summary judgment if that party shows that each material issue of fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact.

Fed. R. Civ. P.56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P.56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P.56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P.56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue (dispute) as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and

supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P.56(e)(3).

## ANALYSIS

To establish a due process violation, a plaintiff must first show that she had a protected property interest under the Due Process Clause, and must then establish that she was deprived of the property without receiving the process that she was constitutionally due. *Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008). The parties do not dispute that, as a teacher entitled to renewable employment contracts, Ms. Asmus had a property interest in continued employment under the Due Process Clause and Idaho law. Thus, the issue as Ms. Asmus poses it is whether the School District took that property interest without affording her due process. *Pl. Brief* (Dkt. 17-1, p. 11).

Ms. Asmus alleges that her due process rights were violated in the following ways: (1) the Board of Trustees that conducted the hearing was biased, (2) she was not given proper notice of the stale claims brought against her at the hearing, (3) the policies she was found to have violated are void for vagueness, and (4) Idaho Code § 33-513 is unconstitutional.

1. **Bias of the Board**

The Due Process Clause requires that an individual be given an opportunity for a meaningful hearing before she is deprived of any significant property interest. *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 541 (1985). At a minimum, due process also requires a hearing before an impartial tribunal. *Clements v. Airport Authority of Washoe*

*Cnty.*, 69 F.3d 321, 333 (9th Cir. 1995). Policy makers with decision-making power, such as the Board in this case, enjoy a presumption of honesty and integrity. *Hortonville Joint School Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 492 (1976). Mere prior involvement in or familiarity with the events involving a contested decision is insufficient to overcome this presumption "in the absence of a showing that [the decisionmaker] is 'not capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Id.* at 493 (quoting *United States v. Morgan*, 313 U.S. 409, 421 (1941)). To overcome an administrative board's presumption of honesty, a plaintiff must demonstrate that the tribunal was actually biased, or that there was an impermissible appearance of bias. *Withrow v. Larkin*, 421 U.S. 35, 47, 55 (1975).

Ms. Asmus alleges that "the School District allowed an appearance of impropriety so severe" that it violated her right to an impartial decisionmaker. These allegations stem from the fact that the School District's attorney, Mr. Lloyd, acted as Superintendent in the proceedings against Ms. Asmus after the District's Superintendent, Mr. Gabrylczyk, had to recuse himself because of his wife's involvement. Both Defendants and Ms. Asmus move for summary judgment on this issue.

The specific actions at issue here are (1) Mr. Lloyd and Mr. Marotz's presence at an executive session on February 18, 2014, where Ms. Asmus was not discussed by name; (2) Mr. Lloyd's presence at a February 27, 2014 executive session, where he recommended that the Board terminate Ms. Asmus; (3) Mr. Lloyd's testimony for the administration at the termination hearings held April 4 and 7, 2014; and (4) Mr. Lloyd

and Mr. Marotz's participation in the post-hearing deliberations of the Board. *Pl. Brief* (Dkt. 17-1) at p. 19.

The Board is presumed to have acted with honesty and integrity. So while some "appearance of impropriety" may exist here because of the Board's prior relationship with Mr. Lloyd, this is insufficient to show bias because Ms. Asmus has not shown that the Board actually prejudged or reasonably appears to have prejudged any issue involved in her case. Indeed, though the Board heard Mr. Lloyd's recommendation for termination, the Board did not ultimately follow it. Instead, the Board placed Ms. Asmus on probation. This helps demonstrate that the decisionmakers were "capable of judging a particular controversy fairly on the basis of its own circumstances." Therefore, Ms. Asmus's motion for summary judgment on this issue is denied and defendants' motion is granted.

**2.      Proper Notice**

Ms. Asmus claims that she did not receive proper notice of the allegations against her. While Ms. Asmus is correct that the allegations listed in the February 27 letter are vague, she was also provided with a more detailed list of witnesses that included the topics they were planning to testify about sometime before March 4 – which was a month before the hearing commenced. *Exhibit B* (Dkt. 20-2). Ms. Asmus has not alleged or shown that the witness list and outline of expected testimony was insufficient to provide her with adequate notice. As defendants point out, "The essential requirements of due process are notice and an opportunity to respond. A pre-termination process need only include oral or written notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity for the employee to present his side of the

story." *Martin v. School Dist. No. 394*, 393 F. Supp. 2d 1028, 1035 (D. Idaho 2005). Because these requirements were met, Ms. Asmus received adequate notice of the allegations against her.

Ms. Asmus further claims that notice was insufficient because some allegations presented against her at the hearing were "stale." Ms. Asmus states that the testimony proffered at the hearing spanned years or even decades, but does not specify which allegations she considers stale, other than an incident that occurred in 2009 and another "a few years ago." *Pl. Brief* (Dkt. 17-1) at ¶¶ 13–14. Ms. Asmus alleges the testimony regarding such older incidents violated her due process rights because "other witnesses who might have seen the events were impossible to identify, or were not present, or their memories had faded, all of which worked to her prejudice." *Pl. Brief* (Dkt. 17-1) at p. 18. While locating witnesses to counter this testimony may have been difficult, it is important that Ms. Asmus was still afforded the opportunity to do so. Those witnesses, as well as the topics they would address, were disclosed to Ms. Asmus and her attorney by March 4, more than a month before the hearing.

Additionally, the witnesses against Ms. Asmus were not testifying about formal allegations or claims they had brought against Ms. Asmus. Instead, they were merely relating their own experiences with her over their course of employment. Further, Ms. Asmus's counsel had the opportunity to object to the witnesses' testimony and to cross-examine the witnesses. Finally, Ms. Asmus was able to testify at the hearing and explain her side of the story. Accordingly, Ms. Asmus's motion for summary judgment on the notice and stale allegations claim is denied, and defendants' motion is granted.

### 3.   **Void for Vagueness**

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The void for vagueness doctrine incorporates notions of fair notice or warning, so under this standard, it must be "clear what the ordinance as a whole prohibits" such that the law gives "the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* at 110, 108.

The threshold question in any vagueness challenge is whether to scrutinize the statute for intolerable vagueness on its face or whether to do so only as the statute is applied in the particular case. Schwartzmiller v. Gardner, 752 F.2d 1341 (9th Cir. 1984).[6] Facial scrutiny is appropriate only where "no standard of conduct is specified at all," *id.* (quoting *Parker v. Levy*, 417 U.S. 733, 755 (1974)), so that the statute is "impermissibly vague in all of its applications." *Id.* (quoting *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 497 (1982)). This is not the case here, so the Court will address whether the rules in question are vague as applied to Ms. Asmus's conduct.

Ms. Asmus contends that rules with broad language like "unprofessional conduct" are impermissively vague, but relies on factually distinguishable cases to support this argument. In *Tuma v. Board of Nursing*, cited by Ms. Asmus in her brief, the Idaho state Board of Nursing found that a nurse had acted "unprofessionally" when she interfered with a physician-patient relationship. 100 Idaho 74 (1979). Idaho law provided that

---

[6] Ms. Asmus argues that the policies are facially vague; the School District argues that the policies are not unconstitutionally vague as applied in this case.

nurses could have their licenses suspended or revoked when their conduct was "immoral, unprofessional, or dishonorable," and went on to give a list of examples of "unprofessional conduct." *Id.* at 77–78. In that case, the Board found that the nurse acted "unprofessionally," but also that her conduct did not fall within any of the descriptions provided by the statute. As a result, the Idaho Supreme Court concluded that the Board could not properly find that her conduct was unprofessional under the statute. *Id.* at 79. Specifically, the court held that while the statute was "not facially vague, it [could not] withstand scrutiny for [v]agueness as applied to the specific conduct here." *Id.*

Conversely, Ms. Asmus's actions actually fall within those proscribed by the Preamble of the Code of Ethics,[7] Principle X of the Code of Ethics,[8] District Policy 7480,[9] and District Policy 7440.[10] While all of these regulations provide only general

---

[7] "The professional educator regards the employment agreement as a pledge to be executed in a manner consistent with the highest ideals of professional service. He believes that sound, professional, personal relationships with colleagues, governing boards, and community members are built upon integrity, dignity, and mutual respect . . . ." *Pl. Brief* (Dkt. 17-1) at p. 14.

[8] "A Professional educator ensures just and equitable treatment for all members of the profession in the exercise of academic freedom, professional rights and responsibilities while following generally recognized professional principles. Unethical conduct includes but is not limited to:
  a) any conduct that seriously impairs the certificate holder's ability to teach or perform his or her professional duties;
  b) committing any act of harassment toward a colleague;
  c) conduct that is offensive to the ordinary dignity, decency, and morality of others." *Id.* at 15.

[9] "The Board advocates principled and respectful treatment of the District's staff by students, parents and patrons. Any action taken by an individual that is determined to be disrespectful, professionally or personally harmful to a teacher, administrator, or staff member may result in disciplinary action or referral to proper legal authority." *Id.* at 16.

[10] "As a valuable and integral member of the Snake River School District, employees are expected to comply and conform to the laws of Idaho and the Code of Ethics of the Idaho Teaching Profession, to adhere to district policies and procedures, to maintain high standards of honesty, integrity and impartiality in the conduct of District business and the use of its resources, and to accept and carry out their responsibilities and assignments with professionalism." *Id.*

descriptions of impermissible conduct, Ms. Asmus's conduct certainly falls within those descriptions. Because these provisions are not unconstitutionally vague as applied to Ms. Asmus's conduct, Ms. Asmus's motion for summary judgment is denied, and defendants' motion is granted.

**4.      Constitutionality of I.C. § 33-513**

Ms. Asmus argues that Idaho Code § 33-513 as amended in 2013 is inadequate to protect her due process rights. The amended version of this statute eliminates a district court's ability to review the grounds for a teacher's disciple or discharge *de novo* on appeal, which the earlier version required. The current version of I.C. § 33-513 still provides for judicial review of school district decisions upon appeal,[11] but Ms. Asmus argues that because post-discipline review is limited, pre-discipline protections should be heightened. While this may or may not be true, I.C. § 33-513 has no bearing on this case because Ms. Asmus did not appeal the board of trustee's decision to a district court. Thus, Ms. Amsus's motion for summary judgment on this matter is denied and defendants' motion is granted.

---

[11] I.C. § 33-513(5)(m) provides that the reviewing court may set aside a board of trustees decision when (i) the findings of fact are not based upon any substantial, competent evidence, (ii) the board of trustees acted without jurisdiction or in excess of its authority, or (iii) the findings by the board as a matter of law do not support the decision. I.C. § 33-513(5)(n) further states that the reviewing court shall affirm the decision of the board of trustees unless the board's action was (i) in violation of constitutional or statutory provisions, (ii) in excess of the statutory authority of the board, (iii) made upon unlawful procedure, or (iv) arbitrary, capricious, or an abuse of discretion.

5. **Breach of Contract**

Ms. Asmus argues that there is no genuine dispute that the District breached her employment contract based on the contention that (1) her due process rights were violated, (2) the School District violated Idaho Code § 33-518 (a personnel file statute), and (3) because the terms of her probation were impossible to comply with. *Pl. Brief* (Dkt. 17-1) at pp. 22-25. Defendants have not substantively responded to these arguments. Instead, defendants ask for this Court to decline to exercise supplemental jurisdiction over Ms. Asmus's state law breach of contract claims in the event that all federal claims are dismissed. Because the Court will grant defendants' motion for summary judgment on all of Ms. Asmus's due process claims and because the issue has not been substantively briefed, the Court will not retain jurisdiction over the state law claims.

## ORDER

**IT IS ORDERED THAT**

1. Plaintiff Asmus's Motion for Summary Judgment (Dkt. 17-1) is **DENIED**.

2. Defendants' Motion for Summary Judgment (Dkt. 16-1) is **GRANTED** as to all due process claims.

3. The Court declines to retain jurisdiction over Plaintiff Amsus's state law breach of contract claim, and that claim is accordingly **DISMISSED** without prejudice.



DATED: April 20, 2016

_____
B. Lynn Winmill
Chief Judge
United States District Court